Ann E. Davey
Vincent Law Office
621 E. 4th Ave. North
P.O. Box 1207
Columbus, MT  59019
(406) 322-8557
ann@johnvincentlaw.com

John R. Vincent
Vincent Law Office
301 East Adams
P.O. Box 433
Riverton, WY  82501
(307) 857-6005
jrv@johnvincentlaw.com

*Attorneys for Plaintiffs*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| SAMM, LLC, a Montana limited | : |
| liability company; SPARKS, INC., a | ) |
| Montana corporation; SAM AND | : |
| MICHELLE SPARKS, Partners, DBA | ) |
| Elite Mechanical, an Alaska Partnership, | : |
| and Samuel and  Michelle Sparks, | ) |
| individually, | : |
| | ) |
|             Plaintiffs, | : |
| | ) |
| vs. | : |
| | ) |
| LIBERTY MUTUAL INSURANCE | : |
| COMPANY, a Massachusetts | ) |
| corporation; THE OHIO CASUALTY | : |
| INSURANCE COMPANY, a New | ) |
| Hampshire Corporation; and OHIO | : |
| SECURITY INSURANCE COMPANY, | ) |

a New Hampshire Corporation,      :

                                   )

            Defendants.         :

## COMPLAINT AND JURY DEMAND

COME NOW the Plaintiffs, and for their Complaint against the Defendants, plead and allege the following:

## PARTIES

1.    Sam and Michelle Sparks ("Sparks") are married and reside in Billings, Yellowstone County, Montana.  Mr. and Mrs. Sparks are the sole owners of the three Plaintiff business entities that are parties to this case.

2.    SAMM, LLC ("SAMM") is a Montana limited liability company with its principal place of business in Billings, Yellowstone County, Montana.  The Sparks are the sole members and owners of SAMM.

3.    Sparks, Inc. ("Sparks, Inc.") is a Montana corporation with its principal place of business in Billings, Yellowstone County, Montana.  The Sparks are the sole shareholders, officers, and directors of Sparks, Inc.

4.    Elite Mechanical ("Elite") is a partnership with its principal place of business in the State of Alaska.  The Sparks are the sole partners and owners of Elite.

5.    Defendant, Liberty Mutual Insurance Company ("Liberty Mutual"), is a Massachusetts corporation.  Liberty is engaged in the business

of insurance and insurance claim management and adjusted claims on behalf of Defendants The Ohio Casualty Insurance Company and Ohio Security Insurance Company for Plaintiffs following an August 8, 2016 fire.

6.      Defendant, The Ohio Casualty Insurance Company ("Ohio Casualty"), is incorporated and has its principal office in New Hampshire. Ohio Casualty issued a Builder's Risk Insurance policy to SAMM with policy limits of $2,500,000.00 which was in effect on August 8, 2016. ("Builder's Risk Policy" or "BRP"). The BRP was underwritten by Ohio Casualty and/or Liberty Mutual. A true and correct copy of the BRP is attached marked Exhibit "1".

7.      Defendant, Ohio Security Insurance Company ("Ohio Security"), is incorporated in Ohio. Ohio Security issued a Business Personal Property/Commercial Insurance policy to Sparks, Inc., with policy limits of $5,000,000.00 which was in effect on August 8, 2016. ("Business Personal Property Policy"). The Business Personal Property Policy was underwritten by Ohio Security and/or Liberty Mutual. A true and correct copy of the Business Personal Property Policy is attached marked Exhibit "2".

8.      Defendant, Ohio Casualty, issued an Inland Marine policy to Sam and Michelle Sparks, Partners, DBA Elite Mechanical. ("Inland Marine Policy"). The Inland Marine Policy was underwritten by Ohio Casualty and/or

Liberty Mutual.   A true and correct copy of the Inland Marine Policy is attached marked Exhibit "3".

## JURISDICTION AND VENUE

9.   Jurisdiction in this Court is proper pursuant to 28 USCA § 1332 as diversity exists between the Plaintiffs and Defendants in this civil action and the amount in controversy exceeds $75,000.00.

10.   In addition to claims for money damages, this action seeks a declaratory judgment pursuant to Title 28, United States Code, § 2201, for the purpose of determining questions of actual controversy between the parties concerning coverage under the insurance policies Plaintiffs purchased from Defendants, as more fully appears below.

## FACTS RELEVANT TO ALL CLAIMS

**A.    Plaintiff Business Entities**

11.   SAMM and Sparks, Inc. are operated by the Sparks from their home office and from property located at 2751 South 56th Street West in Billings, Montana.

12.   Elite conducts its business operations in remote Alaskan villages by providing a broad range of specialty and custom construction and fabrication services, including designing, building and installing modular wastewater and water treatment facilities.

13.     In addition to constructing and fabricating modular water and sewer treatment plants, Elite has provided other water and sewer related services in remote Alaskan villages, such as construction and installation of tank farms, maintenance of lift stations, and replacing old water systems.

14.     In 2004, the Sparks family moved to Billings.   Mr. Sparks continued to work primarily in rural Alaska fulfilling Elite's projects.

15.     In 2007, Mr. and Mrs. Sparks formed Sparks, Inc. and SAMM, LLC ("SAMM").

16.     Sparks, Inc. was formed for the purpose of providing fabrication and construction services for Elite and SAMM.

17.     After Sparks, Inc. was formed, modular units Elite was under contract to provide were built, finished and tested in Billings by Sparks, Inc. and then shipped to Alaska by truck and barge.

18.     SAMM was formed for the purpose of owning and managing the Sparks' commercial real estate.

19.     Mr. and Mrs. Sparks jointly manage the three business entities.

20.     Mrs. Sparks is primarily in charge of financial matters, such as bookkeeping, payroll, recording keeping, and payables and receivables.

21.   Mr. Sparks is primarily in charge of business development, including design, fabrication, and installation of modular housing, medical, and water and sewer units.

22.   Due to the nature of the services provided by Elite and the remote locations where Elite is contracted to work, Elite does not maintain a permanent business location in Alaska.

23.   Upon final installation of the modular facilities and water and sewer plants, Elite returns all surplus tools, equipment, and unused construction materials and supplies to Sparks, Inc. in Billings.

24.   Sparks, Inc. receives and accepts the returned surplus tools, equipment, and unused construction materials and supplies and salvages the returned items.

25.   Sparks, Inc. employees use the various tools, materials, and supplies to build modular units for Elite and/or to perform other construction projects undertaken for SAMM.

26.   The Sparks have, since formation of their business entities, considered the tools, equipment and unused construction materials and supplies to be the property of Sparks, Inc.

27.   The relationship between SAMM, Sparks, Inc., and Elite is interdependent and symbiotic.  Sparks, Inc. provides all labor to construct

buildings for SAMM and modular units or other custom products for Elite. Sparks, Inc. in turn depends on Elite and SAMM for work.

**B.    Insured Business Premises**

28.    In March, 2014, Mr. and Mrs. Sparks purchased an 80 acre tract of land located at 2751 South 56th Street West in Billings.

29.    In October, 2014, SAMM sold a large commercial building it owned on Harnish Boulevard.  Prior to the sale, Sparks, Inc. had rented the building from SAMM for its operations.

30.    Due to the sale, Sparks, Inc. moved all of its equipment, tools, materials, and supplies from the building to the 80 acre tract located at 2751 South 56th Street West and stored the equipment, tools, materials, and supplies inside shipping containers on the 80 acre tract and underneath a 180' long canvas tent.

31.    Sparks, Inc., on behalf of SAMM, began construction of commercial buildings on the 80 acre tract.

32.    Sparks, Inc. began construction of a building, known as "Building 3" in late December, 2015 and early January, 2016.

33.    Building 3 was originally intended to be a personal storage building for the Sparks, and was one level and 7,200 square feet.

34.    During construction, the size of Building 3 was increased to approximately 28,000 square feet by the addition of two stories, a mezzanine, and wings off the side of the building.

35.    The use was also converted from personal use to commercial use.  Sparks, Inc. obtained a building permit for Building 3 on June 24, 2016.

36.    During construction, the building supplies, materials, equipment and tools necessary for the construction of Building 3 were stored inside of Building 3 or next to Building 3.

37.    Sparks, Inc. temporarily moved other tools, materials, and supplies into Building 3.

38.    On August 8, 2016, while Building 3 was under construction, it was totally destroyed by a catastrophic fire.

39.    At the time of the fire, SAMM was insured under the Builders Risk Policy issued by Ohio Casualty with a limit of $2,500,000.00.

40.    Nearly all of the materials, supplies, tools, and equipment owned, used and possessed by Sparks, Inc. were destroyed in the fire.

41.    Construction materials and supplies that had been purchased to complete Building 3 were destroyed in the fire.

42.    Certain items of equipment owned by Elite and insured by Ohio Casualty were in Billings for service and were destroyed by the fire.

## C.   Purchase of Insurance.

43.    Mr. and Mrs. Sparks purchased insurance covering each of their businesses to protect them from unforeseen harm.

44.    The Sparks met Nate Oakley ("Oakley") of HUB International in Billings, Montana and developed a professional insurance agent relationship with him.   Sparks sought his advice concerning the type and amount of insurance required to protect their businesses.

45.    Sparks, Inc. purchased commercial Business Personal Property Policy insurance covering Sparks, Inc. for losses, including business interruption, extra expense, and for damage to the equipment, tools, materials and supplies owned, used and possessed by Sparks, Inc. in relation to its construction business.

46.    On August 8, 2016, Sparks, Inc. insured its BPP located at 2751 S. 56th Street West against loss in the amount of $4,922,750.00.   Ohio Security provided the coverage.

47.    The premium for the Sparks, Inc. policy with a limit for BPP of $2,060,000.00 for the effective dates of June 2, 2016 through June 2, 2017 was $8,810.00.  Sparks, Inc. paid the premium in a timely fashion.

48.    Sparks, Inc. increased the limit of insurance for BPP to $5,000,000.00, effective June 13, 2016.  Due to the increase in coverage, Sparks, Inc. paid an additional premium in the amount of $8,419.00.

49.    Liberty and/or Ohio Security did not request any specific information, such as type, quantity, age, value, title or ownership of insured BPP in underwriting or when periodic increases in coverage were requested by Sparks, Inc.

50.    Elite Mechanical purchased Inland Marine Insurance to cover unforeseen damage to Elite's machinery and operations.

51.    The Elite policy included an Equipment Schedule which sets forth the ACV of each scheduled piece of equipment or tool insured by Elite.

52.    Elite paid a premium in the amount of $386.00 for Commercial Property coverage and a premium in the amount of $18,466.00 for Commercial Inland Marine Coverage.  Ohio Casualty provided the coverage.

53.    SAMM obtained a Builder's Risk Policy ("BRP") for Building 3 to protect the building and materials purchased for the building during its construction.  Ohio Casualty provided the coverage.

54.    The BRP for Building 3 was initially issued in the amount of $625,000.00.  SAMM paid a premium in the amount of $2,898.00.

55.   When the square footage of Building 3 was increased, Mr. Sparks requested an increase in the limit to $2,500,000.00.  SAMM paid an additional premium in the amount of $2,620.00.

56.   On August 8, 2016, all of the insurance covering Plaintiffs' operations and property was issued by either Ohio Casualty or Ohio Surety and all claims relating to the fire were adjusted by Liberty Mutual on behalf of Ohio Casualty and Ohio Surety.  On information and belief, Ohio Casualty and Ohio Surety are subsidiaries of Liberty Mutual.

57.   On August 8, 2016, Plaintiffs had purchased insurance products from Defendants with combined limits of over $9,000,000.00.

58.   To date, Defendants have paid $400,000.00 as an advance under the BRP, $32,772.00 under the Sparks, Inc. policy, and $275,000.00 under the Elite policy.  The total claims made under the three policies exceed $6,000,000.00.

59.   The Plaintiffs/insureds and their owners, Mr. and Mrs. Sparks, have performed all obligations to be performed by them under each policy and faithfully paid the premiums when due.

60.   The Sparks and their businesses are in an inherently unequal bargaining position with Defendants.

61.    The Sparks' motivations for entering the insurance contracts covering their businesses were not-for-profit, rather the insurance was purchased to protect their property and their ability to carry on with their businesses following covered losses.

**D.    August 8, 2016 Fire.**

62.    On August 8, 2016 at approximately 3:20 a.m., a fire of unknown origin was reported on the 80 acre tract located at 2751 S. 56th Street West. The fire totally destroyed Building 3, all of its contents and equipment which was parked outside of Building 3.

63.    Four modular housing units which were near completion were parked next to Building 3.  The units were totally destroyed by the fire.

64.    The concrete slab under Building 3 and utilities underneath the slab sustained damage.  The well, septic system and drain field for Building 3 also sustained damage.

65.    A one-of-a-kind arctic pipe fabrication machine designed and built by Mr. Sparks was completely destroyed by the fire.

66.    A Fire Investigation Report ("Fire Report") was prepared by Michael Spini, Billings Fire Marshall. Sally McKenna, Deputy State Fire Marshal, Fire Prevention and Investigation Bureau, Division of Criminal Investigation, Billings Office assisted and concluded her Report by stating:

Based on the information gathered from the owner, statement from the eyewitnesses to the fire and evidence and artifacts identified at the scene, investigators agreed the cause of this fire did not appear to be the result of a criminal act and as such, there was no need to further disturb the fire scene.

**E.   Adjustment and Breach of Builder's Risk Policy.**

67.   Notice of the fire was provided to Liberty on August 8, 2016. Liberty assigned Kent Robinson, a Large Loss Casualty adjuster, to lead the investigation and adjustment of the Plaintiffs' losses.

68.   Mr. Robinson ordered Mr. Sparks to build a fence around the fire scene, clear the fire scene of debris, and perform other site cleanup.

69.   The cost to clean up the fire site, including labor/payroll expense, fencing, materials, tools, landfill fees, and equipment rental was approximately $140,000.00.  The costs and backup for costs were originally submitted to Mr. Robinson in early November, 2016 and resubmitted on numerous occasions after.  Defendants have refused to pay these sums despite repeated demands for payment made by Mr. and Mrs. Sparks and their businesses, SAMM and Sparks, Inc.

70.   In early September, 2016, Liberty and/or Ohio representatives conducted an internal "coverage review" to determine whether the "occupancy" and "use" coverage limitation in the BRP applied.  Liberty and/or Ohio Casualty representatives determined that it did not.

71.   On September 13, 2016, Liberty adjuster Kent Robinson prepared a "Sworn Statement for Advance Payment" and provided it to SAMM, LLC to complete.

72.   Sam Sparks completed and signed the Sworn Statement for Advance Payment and returned it to Liberty.  A copy of the Sworn Statement is attached hereto as Exhibit "4".

73.   Liberty issued a $400,000.00 advance payment on the BRP by check dated September 14, 2016.

74.   The check was not accompanied by a letter or statement from Liberty.  The check stub states "Memo: Advance to settlement of builder's Risk loss."  A copy of the check stub is attached hereto as Exhibit "5".

75.    Following the fire, Mr. and Mrs. Sparks and SAMM did the following to assist and cooperate with Liberty in adjusting the claim relating to the loss of Building 3:

   a.  provided bank and business records concerning the real and personal property destroyed in the fire;

   b.  supplied signed and sworn proofs of loss in the form provided by Defendants;

   c.  engaged their CPA to prepare schedules to respond to Defendants' inquiries relating to the real property;

-14-

d. allowed the property to be inspected whenever requested by Defendants or consultants retained by Defendants;

e. submitted to examinations under oath conducted by counsel for Defendants;

f. met with consultants retained by Liberty to prepare bid documents for replacement of the building;

g. worked with three Billings general building contractors to obtain bids to rebuild Building 3; and

h. obtained a report from their structural engineer to determine whether the concrete pad for Building 3 required replacement.

76.    Mr. and Mrs. Sparks and SAMM have fully performed all duties required under the BRP.

77.    SAMM provided its initial claim with supporting documents for the replacement cost of Building 3 on November 10, 2017.  Liberty subsequently requested SAMM to complete a Proof of Loss form for Building 3.   SAMM completed Proofs of Loss to account for the advance and cleanup expenses on January 7, 2018 and submitted the Proofs of Loss to Liberty/Ohio Casualty on January 12, 2018.

78.    On February 5, 2018, more than 18 months after the fire, Liberty and Ohio Casualty wrote to Mr. and Mrs. Sparks to inform them that Liberty

had concluded its investigation relating to the loss and had determined there was no coverage under the terms and conditions of the BRP.

79.    Liberty concluded that Mr. and Mrs. Sparks, doing business as SAMM, occupied the insured premises without Liberty's prior consent and/or put Building 3 to its intended use.

## F.    Adjustment and Breach of Business Personal Property Policy.

80.    Immediately after the fire, Mr. Sparks notified Mr. Robinson of the general types and quantity of business personal property ("BPP") used, possessed, and owned by Sparks, Inc. that was destroyed by the fire.

81.    Due to the custom plumbing, fabrication and construction work performed by Sparks, Inc., this included, but is not limited to:

a.  Plumbing materials, fixtures, and supplies;

b.  Electrical materials, fixtures and supplies;

c.  Various hand tools;

d.  Various commercial mechanical and electrical tools;

e.  Welders and welding supplies;

f.  Various types of PVC and steel pipe;

g.  Pipe positioners and other positioning equipment;

h.  HVAC materials, fixtures and supplies;

i.  Custom arctic pipe fabrication machine;

j.   Scissor (man) lifts; and

k.   A Caterpillar skid steer.

82.   Within days of the fire, Liberty and Ohio Surety retained a consultant, Nardone & Associates ("Nardone"), to help Mr. Sparks identify the type, quantity and value of destroyed BPP.  The Nardone consultants assisted Mr. Sparks for a few days and then prepared an initial spreadsheet report.  Mr. and Mrs. Sparks were provided a copy of the report which identified a partial loss amounting to $1,510,167.25.

83.   The Nardone inventory report did not capture items that could not be identified.  Therefore, Mr. Sparks devoted a substantial amount of time creating an inventory of the BPP that was destroyed in the fire.  He worked with employees of Sparks, Inc. to determine the type and amount of BPP destroyed and obtained pricing for equivalent property, and spent hundreds of hours working on the inventory.

84.   Mr. and Mrs. Sparks paid a former electrician who had worked for both Elite and Sparks, Inc. to prepare an electrical inventory.  In late April, 2017, the inventory, and name and phone number of the employee, was provided to Liberty, but Liberty never contacted the employee.

85.   An equivalent to the arctic pipe fabrication machine which was designed and built by Mr. Sparks is not available for purchase on the open

market.  Liberty retained an engineer to assist Mr. Sparks in determining the cost of rebuilding/reengineering the machine.

86.   Mr. Sparks was concerned with the consultant's lack of experience and therefore sought the services of an engineering firm, Fennessy Engineering, for assistance.  Fennessy Engineering estimates the cost to replace the arctic pipe machine is $1,509,400.00.   Liberty's consultant, who stated estimates the actual cash value of the arctic pipe machine is approximately $180,000.00.

87.   Following the fire, Mr. and Mrs. Sparks and Sparks, Inc. undertook the following actions to assist and cooperate with Liberty in adjusting the claim relating to the loss of BPP:

> a.  provided bank and business records, access to QuickBooks records and tax returns;
>
> b.  supplied signed and sworn proofs of loss in the form provided by Defendants;
>
> c.  allowed the property to be inspected whenever demanded by Defendants or their consultants;
>
> d.  secured the fire site and cleaned up the fire site;
>
> e.  submitted to examinations under oath;

      f.  met with consultants retained by Liberty to examine and identify burned property; and

      g.  worked with suppliers to obtain information as to the value of certain items of property.

88.    Between August 8, 2016 and February 21, 2018, Sparks, Inc. submitted claims.  On February 21, 2018, in response to Liberty's request, Sparks, Inc. resubmitted claims on Proof of Loss forms first provided by Liberty on December 19, 2017.  Sparks, Inc. made a claim in the amount of $4,847,558.52 to account for BPP totally destroyed in the fire.  Liberty paid $32,772.00 in response.

89.    Sparks, Inc. made claims relating to equipment rental expense incurred after the fire in the continuation of its business and appraisal and inventory expense it incurred. Mr. Robinson told Mr. Sparks to rent equipment to continue operations and the expense would be reimbursed, but reimbursement has not been made for rental equipment expense Sparks, Inc. incurred in Billings.

90.    Liberty, on behalf of Ohio Casualty and Ohio Surety, wrote Plaintiffs on March 23, 2018 and set forth Defendants' position that it does not believe Sparks, Inc. has an ownership interest in the property destroyed

in the fire, despite Mr. and Mrs. Sparks' statements to the contrary and despite Sparks, Inc.'s payment of premiums for insurance covering BPP.

91.    As a result of the complete destruction of all of Sparks, Inc.'s BPP and Liberty's adjustment of its claim, Sparks, Inc. is unable to complete projects for SAMM and Elite and has been driven out of business.

**G.    Adjustment and Breach of Inland Marine Policy.**

92.    Defendants were notified within days of the fire that certain equipment, including a Caterpillar backhoe, fusion machines and Garco spray machines, listed on the Equipment Schedule to the Elite Inland Marine Policy had been destroyed in the August 8, 2016 fire.

93.    Mr. Sparks notified Mr. Robinson that he would need to replace the backhoe immediately in order to have the replacement backhoe shipped to Dillingham, Alaska.   Finally, Mr. Sparks notified Mr. Robinson that the barge season would end in early October, therefore replacing the equipment before the end of the barge season was critical.

94.    On or about April 30, 2017, nearly 9 months after the fire, Defendants made a payment totaling $245,000.00 for equipment destroyed in the August 8, 2016 fire that was listed on the Equipment Schedule to the Elite Inland Marine Policy.  Later, Liberty and Ohio Casualty made a payment

in the amount of $25,000.00 to account for the full stated value of the equipment.

95.    Due to Defendants delay in making a timely payment for equipment owned and insured by Elite that was destroyed in the fire, Elite incurred extraordinary expense to rent equipment in Alaska in order to complete its project in Dillingham.  Mr. Robinson told Mr. Sparks to rent equipment in Alaska and the expense would be reimbursed.  Elite has not fully been reimbursed.

96.    Further, due to the Defendants' conduct in adjusting the claims, Elite's business has essentially been terminated.

## FIRST COUNT
## DECLARATORY JUDGMENT

97.    Plaintiffs re-allege and incorporate by reference all allegations in the preceding paragraphs of this Complaint.

98.    For their First Count, SAMM, Sparks, Inc. and Elite complain of the Defendants and state the following claim against them:

**A.    Builders Risk Policy.**

99.    There is a dispute and controversy amongst the parties, SAMM, LLC, Liberty and Ohio Casualty concerning the interpretation and application of the Builder's Risk Policy.

100.   The dispute relates to the "Occupancy" and "Use" exclusion set forth in the BRP under the "Additional Coverage Limitations" heading.

101.   Defendants, Liberty and Ohio Casualty, contend SAMM, the insured, occupied the building in whole or in part or put it to its intended use. SAMM denies it occupied the building in whole or in part or put it to its intended use.

102.   SAMM further alleges Liberty and Ohio Casualty waived the right to assert the exclusion as a defense after voluntarily, and without reserving rights, making an advance payment to SAMM as a partial settlement under the BRP.

103.   SAMM seeks a judicial declaration that the "Occupancy" and "Use" exclusion set forth in the BRP does not apply to defeat coverage under the BRP.

104.   The judgment of this Court will effectively resolve and terminate the uncertainty and controversy amongst the parties.

**B.    Business Personal Property Policy.**

105.   Plaintiffs re-allege and incorporate by reference all allegations in the preceding paragraphs of this Complaint.

106.   Relevant portions of the Business Personal Property Policy are set forth as follows:

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

## 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

* * *

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

**(1)** Furniture and fixtures;

**(2)** Machinery and equipment;

**(3)** "Stock";

**(4)** All other personal property owned by you and used in your business;

**(5)** Labor, materials or services furnished or arranged by you on personal property of others;

**(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(7)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

107.   There is a dispute and controversy amongst the parties, Sparks, Inc., Liberty and Ohio Security concerning the interpretation and application of the Business Personal Property Policy.

108.   Sparks, Inc. is entitled to have a declaration of its rights and further relief, including a mandatory injunction, finding and declaring that Sparks, Inc. is owner of and has an insurable interest in the business personal property as defined by and covered by the Business Personal Property Policy.

109.   Liberty and Ohio Security contend Sparks, Inc. has no ownership interest in the BPP which was destroyed in the fire.  Sparks, Inc. contends it does have an ownership interest in the BPP destroyed in the fire, evidenced by its payment of insurance premiums to insure against loss of the BPP.

110.   Plaintiffs also request that Liberty and Ohio Security be ordered and directed to pay all sums that they have no reasonable basis to contest.

**SECOND COUNT**
**BREACH OF CONTRACT – Builder's Risk Policy**

111.   Plaintiffs re-allege and incorporate by reference all allegations in the preceding paragraphs of this Complaint.

112.   Liberty and Ohio Casualty entered the BRP with SAMM and, in exchange for SAMM's payment of the premium, Liberty and Ohio Casualty

promised to investigate and make payments due to its insured, SAMM up to the stated limit of coverage of $2,500,000.00.

113.   On September 14, 2016, Liberty and Ohio Casualty made a $400,000.00 advance payment to SAMM under the BRP.

114.   The Limit of Coverage provided is the BRP is $2,500,000.00. Plaintiffs reasonably believe the amount required to reconstruct Building 3 to its condition immediately prior to the fire is at least $1,188,000.00.   SAMM also incurred expense to clean up the fire site.

115.   Defendants have refused to pay any sum in addition to the advance payment without any reasonable basis.

116.   Mr. and Mrs. Sparks and SAMM have fully complied with all covenants on their part and have paid all premiums when due.

117.   Coverage under the BRP was triggered by the August 8, 2016 fire.   Liberty and Ohio Casualty's refusal to honor SAMM's claims for coverage constitutes an irrevocable, material, and total breach of Liberty and Ohio Casualty's policy of insurance.

118.   As a direct and proximate result of the breach of contract committed by Liberty and Ohio Casualty, Plaintiff has incurred substantial compensatory losses.   The damages suffered by SAMM were reasonably

foreseeable by Liberty and Ohio Casualty.  The damages will be proven at trial and exceed the jurisdictional amount of this Court.

## THIRD COUNT
## BREACH OF CONTRACT – Sparks, Inc.

119.  Plaintiffs re-allege and incorporate by reference all allegations in the preceding paragraphs of this Complaint.

120.  Sparks, Inc. and Liberty and Ohio Security entered the Business Personal Property Policy under which Liberty and Ohio Security promised, in exchange for good and valuable consideration, to investigate and make casualty payments due to its insured, Sparks, Inc. for loss or damages caused by a covered peril.

121.  Coverage was triggered by the August 8, 2016 fire and Sparks, Inc. immediately reported the loss.  Sparks, Inc. further reported claims for debris removal, rental equipment expense (extra expense), appraisal/inventory expense, and business interruption.  Sparks, Inc.'s claims exceed $5,000,000.00.

122. Liberty and Ohio Security have made a single payment to Sparks, Inc. in the amount of $32,772.00.

123.  Defendants have refused to pay any sum in addition to the above described payment without any reasonable basis.

124.   Mr. and Mrs. Sparks and Sparks, Inc. have fully complied with all covenants on their part and have paid all premiums when due.

125.   Liberty and Ohio Security's refusal to honor Sparks, Inc.'s claims for coverage constitutes an irrevocable, material, and total breach of Liberty and Ohio Security's policy of insurance.

126.   As a direct and proximate result of the breach of contract committed by Liberty and Ohio Security, Plaintiff has incurred substantial compensatory losses.   The damages suffered by Sparks, Inc. were reasonably foreseeable by Liberty and Ohio Security.   The damages will be proven at trial and exceed the jurisdictional amount of this Court.

**FOURTH COUNT**
**BREACH OF CONTRACT – Sam and Michelle Sparks, Partners, DBA**
**Elite Mechanical**

127.   Plaintiffs re-allege and incorporate by reference all allegations in the preceding paragraphs of this Complaint.

128.   Elite Mechanical and Liberty and Ohio Casualty entered the Business Personal Property Policy under which Liberty and Ohio Casualty promised, in exchange for good and valuable consideration, to investigate and make casualty payments due to its insured, Elite Mechanical for loss or damages caused by a covered peril.

129.  Coverage was triggered by the August 8, 2016 fire and Elite Mechanical immediately reported the loss.  Elite notified Liberty immediately regarding the equipment it owned and insured that had been destroyed by the fire.

130.  Liberty and Ohio Casualty's late payment of the stated values assigned to the equipment destroyed in the fire resulted in harm to Elite because it was forced to rent equipment rather than use its own equipment. Liberty's adjuster instructed Elite to rent equipment and that Liberty would pay for rental equipment.  Elite incurred over $35,000.00 in rental equipment expense and Liberty and Ohio Casualty paid $5,000.00.

131.  Defendants have refused to pay any sum in addition to the above described payment.

132. Mr. and Mrs. Sparks and Elite have fully complied with all covenants on their part and have paid all premiums when due.

133.  Liberty and Ohio Casualty's refusal to honor Sparks, Inc.'s claims for coverage constitutes an irrevocable, material, and total breach of Liberty and Ohio Casualty's policy of insurance.

134. As a direct and proximate result of the breach of contract committed by Liberty and Ohio Casualty, Plaintiff has incurred substantial compensatory losses.   The damages suffered by Sparks, Inc. were

reasonably foreseeable by Liberty and Ohio Casualty.  The damages will be proven at trial and exceed the jurisdictional amount of this Court.

## FIFTH COUNT
## CLAIMS FOR VIOLATIONS OF MONTANA UNFAIR TRADE PRACTICES ACT, Section 33-18-201, M.C.A., *et seq.*

135.   Plaintiffs re-allege and incorporate by reference all allegations in the preceding paragraphs of this Complaint.

136.  Defendants Liberty Mutual, Ohio Casualty, and Ohio Surety are engaged in the business of insurance, insurance claim management, and insurance claim handling in the State of Montana.

137.   In return for the privilege of earning income by providing insurance coverage and protection to Montanans, Defendants each had the responsibility to understand and apply the terms of their respective insurance policies in accordance with Montana law and to handle claims arising under said policies in strict accordance with well-established standards applicable to the insurance industry and required by Montana law, including Montana's Unfair Trade Practices Act, Section 33-18-201, M.C.A.  These Montana statutes all establish and set forth Montana law and public policy which requires prompt and fair settlement of insurance claims in which liability is reasonably clear.

138.   Defendants knew at all times it was unlawful to refuse to pay claims under its Builders Risk, Business Personal Property, and Inland Marine

insurance policies, without conducting a reasonable investigation based upon all available information.

139.   Defendants knew at all times they had the responsibility to document and preserve all facts pertinent to each company's handling of claims within a claim file.

140.   Defendants knew at all times it was unlawful to delay or refuse payment of claims based upon speculation, surmise or guesswork.

141.   Defendants knew at all times it was unlawful to delay its investigation or payment of claims by requesting Plaintiffs to submit preliminary claim reports and then later requiring submission of proof of loss forms which contain the same information.

142.   Defendants knew at all times that they each had the responsibility to immediately make advance payment of covered property losses, in all cases where the documentation in its claim file revealed liability for such losses was reasonably clear.

143.   Defendants knew at all times that it had the responsibility to attempt to bring about prompt, fair and equitable settlement of claims where the documentation in its claim file revealed liability for such claim was reasonably clear.

144.   Defendants knew at all times it would be unlawful to compel insureds to institute litigation to recover amounts due under their insurance policies by offering substantially less than the amounts ultimately recovered in actions brought by the insureds.

145.   Defendants' insurance policies were in full force and effect at all times relevant to this Complaint.   In these policies Liberty and Ohio Casualty insured SAMM under the BRP; Liberty and Ohio Surety insured Sparks, Inc. under the BPP; and Liberty and Ohio Casualty insured Elite under the Inland Marine Policy.   In each policy Defendants promised to pay to Plaintiffs the actual cash value, replacement value, replacement cost or appraised value of the insured property, less the deductible, in the event of its total loss.

146.   On August 8, 2016, during the period in which the policies were in full force and effect, a catastrophic fire occurred which completely destroyed Building 3, all of the business personal property in the building, and other personal property, including machinery and four completed modular units.   On that same day, Plaintiffs informed Defendants the fire had occurred and met with Defendants' adjuster at the scene of the fire to begin the investigation as to the cause of the fire and the type and value of property destroyed in the fire.

147.   On various occasions after the fire, Mr. and Mrs. Sparks notified Defendants of the total loss of property and that they could not conduct business

unless Defendants paid the total amount or the undisputed amount of claims due under each of the policies.  To date, Defendants have made a $400,000.00 advance payment under the BRP and on February 5, 2018, declined to provide further coverage.  SAMM claims at least an additional $800,000.00 is due under the BRP.

148.  Defendants have made only *de minimus* payments under the BPP, in the amount of $32,772.00.  Sparks, Inc. claimed in its Proof of Loss the sum of $4,847,558.52 for BPP and $40,305.54 for rental equipment (extra expense).  Sparks, Inc. has further notified Liberty and Ohio Security of its claims for debris removal, appraisal/inventory expense and business interruption.

149.  Defendants made payment of $270,000.00 to Elite after months of written demands to Defendants and immediate notification of the loss of scheduled equipment in the fire.  Elite incurred rental equipment expense as a result, and notified Defendants.   Defendant paid Elite $5,000.00 for rental equipment expense.

150.  Plaintiffs promptly informed Defendants that its assessment of the value of each of Plaintiffs' losses was unreasonably low, inaccurate and unfair.

151.  Thereafter, and for nearly two years, Defendants and each of them neglected and intentionally refused to attempt to effectuate a prompt, fair and equitable settlement of Plaintiffs' damage claims in direct violation of Montana

law.  In further violation of applicable law, Defendants neglected and refused to make advance payment of any portion of Plaintiffs' property losses, including portions of Plaintiffs' loss that Defendants knew was due, owing and entirely undisputed, seeking to exploit the leverage created by its refusal to pay that would ultimately compel Plaintiffs to accept an unreasonably low settlement of their property damage claims or face closure of their businesses.  Plaintiffs and their attorneys have repeatedly offered reasonable settlement means, methods, and amounts, and Defendants continue to refuse to fairly or reasonably adjust and pay Plaintiffs' claims.

152.  Throughout its handling of Plaintiffs' property loss claims, Defendants consciously disregarded facts present in its claim file, failed to document, support or explain its refusal to advance pay sums due and owing, neglected to undertake a reasonable investigation in accordance with insurance industry standards, relied exclusively upon surmise, speculation and guesswork and stubbornly refused to provide Plaintiffs any rational or objective explanation for its refusal to advance pay Plaintiffs' property loss admittedly due or attempt to bring about a prompt, reasonable settlement of Plaintiffs' claims.

153.  Defendants' claim handling practices and actions caused harm to Plaintiffs in the form of frustration, anger, humiliation, embarrassment, chagrin, anxiety, disappointment and worry.

154.   In violation of subparagraphs 1, 4, 5, 6, 9 and 13 of Montana's Unfair Trade Practices Act, Section 33-18-201, M.C.A., Defendants misrepresented pertinent facts and insurance policy provisions relating to coverages at issue, refused to pay claims under the Builder's Risk Policy, Business Personal Property Policy, and Inland Marine Policy without conducting a reasonable investigation based upon all available information; failed to affirm or deny coverage of claims within a reasonable time after proof of loss statements were completed and submitted by Plaintiffs; attempted to delegate and shift to its insured its non-delegable duty to conduct a fair and full investigation and adjustment of the loss; requested initial claim reports and then demanded completion of proof of loss forms which contained the same information; failed to document facts supporting its handling of Plaintiffs' claims within its claim file; failed to pay all sums due as required by Montana law; intentionally denied and delayed its handling of Plaintiffs' claims based upon speculation, surmise or guesswork; and failed and neglected to attempt to bring about a prompt, fair and equitable settlement of claims where the reasonably available documentation revealed liability for such claims was reasonably clear.

155.   This illegal conduct caused Plaintiffs to suffer injury, damage and loss.  In addition, Mr. Sparks and Mrs. Sparks suffered severe emotional distress resulting in two separate heart attacks suffered by Mr. Sparks, depression and

anxiety suffered by Mrs. Sparks, and the destruction of their family businesses, SAMM, Sparks, Inc. and Elite Mechanical.

156.  At all times relevant to this Complaint, Defendants and each of them combined forces to exert economic leverage against Plaintiffs calculated to force them to accept an unreasonably low offer of settlement.  During this entire period, Defendants abused existing insurance claim handling standards and norms, the law of Montana and its own insureds.

157.  At all times during its handling of Plaintiffs' property loss claims, Defendants acted knowingly, in conscious disregard of the certainty that their conduct was causing injury to Plaintiffs, all for the purpose of bringing economic pressure to bear upon Plaintiffs, leveraging and low-balling them and enhancing its income at their expense, consistent with its established procedures, national claim handling strategies, incentives and goals.

## FIFTH COUNT
## PUNITIVE AND EXEMPLARY DAMAGES

158.  Plaintiffs re-allege and incorporate by reference all allegations in the preceding paragraphs of this Complaint.

159.  Pursuant to § 33-18-242(4) and § 27-1-221, MCA, Plaintiffs seek exemplary and punitive damages against Defendants.

160.  Defendants' conduct described herein clearly and convincingly demonstrates actual malice, actual fraud, or both.

161.   Defendants had knowledge of facts or intentionally disregarded facts that created a high probability of injury to Plaintiffs and deliberately proceeded to act in conscious or intentional disregard of the high probability of injury to the plaintiff and/or or deliberately proceeded to act with indifference to the high probability of injury to the plaintiff.

162.   In the alternative, Defendants made representations to Plaintiffs with knowledge of their falsity and/or concealed material facts with the purpose of depriving the plaintiffs of property or legal rights and otherwise caused Plaintiffs' injury.   These representations include, but are not limited to, affirmative statements that Defendants had issued checks to Plaintiffs to pay them for the loss of insured properties when Defendant had in fact not issued checks, stated to Plaintiffs that certain claims had been paid when in fact they had not, and making advance payments with no reservations regarding coverage and later rescinding and changing positions after Plaintiffs had reasonably relied on Defendants' conduct.

163. Defendants' conduct as described in this complaint justifies assessment of punitive damages against Defendants for the purpose of disgorging all ill-gotten gains obtained through such wrongful behavior, taking the profit out of unlawful claim handling practices, punishing and making an example of Defendants sufficient to deter similar unfair claim settlement

practices by these Defendants, and all other insurers doing business in Montana, now and forever in the future, all in accordance with the strict procedural and substantive protections afforded to Defendants by Montana law.

WHEREFORE, Plaintiffs respectfully request and pray for:

1.      Declaratory Judgment finding and declaring: a) that the Use and Occupancy Exclusion does not defeat coverage under the Builder's Risk Policy issued to SAMM by Liberty Mutual and Ohio Casualty; and b) that Sparks, Inc. is the "owner" and has an "insurable interest" in the business personal property insured under the Business Personal Property policy issued by Liberty and Ohio Surety to Sparks, Inc.;

2.      Plaintiff, SAMM further prays that it shall have and recover its damages from Liberty and Ohio Casualty on account of Defendants' breaches of contract, which damages shall be proven at trial, plus interest and attorney fees and costs;

3.      Plaintiff, Sparks, Inc. further prays that it shall have and recover its damages from Liberty and Ohio Surety on account of Defendants' breaches of contract which damages shall be proven at trial, plus interest and attorney fees and costs;

4.      Plaintiff, Elite Mechanical further prays that it shall have and recover its damages from Liberty and Ohio Casualty on account of Defendants'

breaches of contract which damages shall be proven at trial, plus interest and attorney fees and costs;

5.    Plaintiffs further pray that they shall have and recover all sums required to compensate them for all damages, harm and loss caused by the conduct of Defendants which violates Montana's Unfair Trade Practices Act, § 33-18-201, *et. seq.*

6.    Plaintiffs further pray that they shall have and recover all sums required to punish and make an example of Defendants' wrongful and unlawful handling of Plaintiffs' claims, and deter similar wrongful acts on the part of Defendants and all other for-profit insurance claim handlers now and in the future;

7.    Plaintiffs further pray to be reimbursed their attorney fees and costs of suit herein; and,

8.    Plaintiffs further pray that they receive such other and further relief as the Court may deem appropriate under the circumstances.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

DATED this 7th day of August, 2018.

Respectfully Submitted,

SAMM, LLC; Sparks, Inc.; Sam and Michelle
Sparks, Partners DBA Elite Mechanical; and
Sam and Michelle Sparks, Plaintiffs


BY:      /s/
ANN E. DAVEY
JOHN R. VINCENT
Vincent Law Office
621 E. 4th Ave. North
P.O. Box 1207
Columbus, MT 59019
ann@johnvincentlaw.com
jrv@johnvincentlaw.com

*Attorneys for Plaintiffs*